UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:

WILLIAM MOORER,  Case No. 15-30422-WRS
 Chapter 13
 Debtor.

**MEMORANDUM OPINION**

This case is before the Court on the Amended Motion to Reconsider or Set Aside filed by Community Bank & Trust. (Doc. 63). Community Bank & Trust asks this Court to vacate its order confirming the Debtor's Chapter 13 plan on the grounds that the plan violates the anti-modification provision of 11 U.S.C. § 1322(b)(2). The Debtor has filed a response, (Doc. 65), and the Court heard from the parties at a hearing on January 12, 2016. For the reasons set forth below, Community Bank & Trust's motion is DENIED.

**I. FACTS & PROCEDURAL HISTORY**

William Moorer ("Moorer") owns 98 acres of real property in Macon County, Alabama ("the Land"), that is currently worth $198,000.[1] (Doc. 41). On February 14, 2007, Moorer obtained a loan for $289,830 from Community Bank & Trust ("CBT"), in return for a Commercial Property Note and mortgage on the Land in favor of CBT. (Claim 4). Moorer testified that this loan was intended as an investment in a chemical company, and the mortgage

---

[1] The Court established this valuation based on testimony and evidence offered by the parties at an evidentiary hearing held on August 11, 2015. (Doc. 41).

included an "Environmental Clause" requiring Moorer to indemnify CBT for liability arising out of the use, manufacture, storage, release, or disposal of any "hazardous substance" on or about the Land. (Claim 4). Moorer and CBT entered a modification of the Commercial Property Note on May 15, 2013, setting the balance at $224,660.41 with 8% interest and a maturation date of May 15, 2016. (Claim 4).

Moorer filed Chapter 13 bankruptcy on February 18, 2015, proposing to pay $147,000 toward the Commercial Property Note and mortgage, and to discharge the balance. (Docs. 1 & 2). CBT filed a secured proof of claim for $212,735.96 and objected to confirmation of Moorer's Chapter 13 plan. (Claim 4; Doc. 13). After the Court set the value of the Land at $198,000, Moorer amended his plan to pay that amount toward CBT's mortgage at 4.75% interest. (Doc. 50).

The Court held an evidentiary hearing on December 15, 2015 to determine whether Moorer could modify CBT's contract rights in his Chapter 13 plan.[2] Moorer testified that the loan was intended as a business investment in a chemical company and that most of the Land is used as a farm. He also testified that he was living in a mobile home on the Land when he filed bankruptcy, but that he mortgaged the Land to CBT before he moved the mobile home on it and that it did not become his primary residence until 2014. Dave Bryant, CBT's president, testified that CBT classified its loan to Moorer as commercial. Finally, Kenny Wallis, a real estate appraiser, testified that most of the Land is used as a cattle pasture. His appraisal of the Land, which was offered as evidence in the August 11 valuation hearing, indicates that the mobile

---

[2] CBT also argued at the evidentiary hearing that Moorer proposed his plan in bad faith and that his plan was not feasible. The Court rejected these arguments at the hearing, and CBT did not raise them in its motion to reconsider.

home has been permanently affixed to the Land.  (Hearing on Aug. 11, 2015; Ex. 4).

Ruling orally, the Court held that Moorer could modify CBT's contract rights because the Land was not used solely as his principal residence; the Court subsequently confirmed Moorer's plan.  (Doc. 57).  CBT has moved to reconsider the confirmation order, arguing that the Court misconstrued the anti-modification provision of 11 U.S.C. § 1322(b)(2).  (Doc. 61).

## II.  ANALYSIS

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the District Court's General Order of Reference dated April 25, 1985.  Reconsideration of an order confirming a Chapter 13 plan is a core proceeding.  28 U.S.C. § 157(b)(2)(L).  This is a final order.

### A.  Standard of Review

CBT's motion to reconsider a confirmation order is governed by Rule 59(e) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 9023.  To prevail on its motion, CBT must prove one of three things:

1. An intervening change in the law,
2. Consideration of newly discovered evidence, or
3. The need to correct clear error or prevent manifest injustice.

In re Danley, 540 B.R. 468, 474 (Bankr. M.D. Ala. 2015) (internal brackets omitted); In re Muhammad, 536 B.R. 469, 477 (Bankr. M.D. Ala. 2015).  CBT has made no showing of a change in the law or of newly discovered evidence, so it can only prevail if the Court's ruling was clearly erroneous.

### B.  Bifurcation and "Cramdown" of Secured Claims

The general rule in bankruptcy is that "a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that lien is considered unsecured." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 238-39 (1989); *see* 11 U.S.C. § 506(a). "Chapter 13 debtors enjoy broad power to modify the rights of the holders of secured claims." American Gen. Fin., Inc. v. Paschen (In re Paschen), 296 F.3d 1203, 1205 (11th Cir. 2002) (internal quotation marks omitted). A Chapter 13 debtor who wishes to keep collateral securing a creditor's claim may do so over that creditor's objection by complying with 11 U.S.C. § 1325(a)(5)(B). That statute permits a debtor to pay the secured creditor the replacement value of the collateral plus interest calculated from the prime rate. Till v. SCS Credit Corp., 541 U.S. 465, 479 (2004); Associates Commercial Corp. v. Rash, 520 U.S. 953, 963 (1997). Known as a "cramdown" in bankruptcy parlance, this process "permit[s] the bifurcation of an undersecured claim into its secured and unsecured parts, with creditors only assured of receiving full value for the secured portion of the claim." Paschen, 296 F.3d at 1206.

This is precisely what Moorer's plan proposes. Rather than pay CBT its full claim of $212,735.96 at 8% interest, Moorer wants to pay CBT only the Land's value of $198,000 at 4.75% interest, strip off CBT's mortgage, and discharge the balance he owes CBT. (Doc. 50).

### C. The Anti-Modification Exception

Pursuant to his cramdown power under § 1325(a)(5)(B), a Chapter 13 debtor may modify the contract rights of secured creditors, "other than a claim secured only by a security interest in real property that is the debtor's principal residence. . . ." 11 U.S.C. § 1322(b)(2). This exception, known as the anti-modification provision, protects an undersecured home mortgage from being "stripped down" under 11 U.S.C. § 506(a) to the value of its collateral in Chapter 13

-4-

bankruptcy. Nobleman v. Am. Sav. Bank, 508 U.S. 324, 327 (1993). CBT asserts that the anti-modification provision applies here to prevent Moorer from modifying its contract rights.

As discussed above, the evidence showed that at the time Moorer filed bankruptcy, he was using a mobile home on the Land as his principal residence, but that most of the Land was being used as a cattle pasture and for other farming purposes. Therefore, the Land was not used exclusively as his principal residence. Thus, the question presented is whether the anti-modification provision applies only to real property that is exclusively the debtor's personal residence, or whether it also applies to real property that includes the debtor's personal residence but also has commercial uses. There is a split of authority on this issue.

At the evidentiary hearing and in its motion to reconsider, CBT made much of the fact that Moorer claimed Alabama's homestead exemption on the Land as the basis for applying the anti-modification provision.[3] CBT's position is implicitly supported by a minority of cases holding that real property securing a creditor's mortgage need not be exclusively used as the debtor's principal residence for the mortgage to be protected from modification. *See* Wages v. J.P. Morgan Chase Bank, N.A. (In re Wages), 508 B.R. 161, 167-68 (9th Cir. B.A.P. 2014) (interpreting an identical anti-modification provision in 11 U.S.C. § 1123(b)(5)); In re Schayes, 483 B.R. 209, 216 (Bankr. D. Ariz. 2012) (same); In re Macaluso, 254 B.R. 799, 800 (Bankr. W.D.N.Y. 2000). According to this line of cases, the word "only" in the anti-modification provision qualifies the requirement that real property secure the mortgage, but not the

---

[3] *See* ALA. CODE § 6-10-2. Alabama recently amended this statute to increase the exemption amount from $5,000 to $15,000. Because Moorer's petition preceded the amendment, the prior amount of $5,000 applies in his case.

-5-

requirement that the real property be the debtor's principal residence. Wages, 508 B.R. at 167; Schayes, 483 B.R. at 215. In other words, there is no second "only" in the statutory language that would limit the use to which the real property is put; "either a property is a debtor's principal residence or it is not." Wages, 508 B.R. at 167; Schayes, 483 B.R. at 215. So long as real property is used as the debtor's principal residence, and the mortgage is secured only by that real property, the mortgage is protected from modification even if the real property serves additional purposes. Wages, 508 B.R. at 167.

However, the majority of cases holds that the anti-modification provision applies only to mortgages secured by real property that is used exclusively as the debtor's principal residence. *See, e.g.*, Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough), 461 F.3d 406, 411 (3d Cir. 2006); Lomas Mortg., Inc. v. Louis, 82 F.3d 1, 7 (1st Cir. 1996); In re Abrego, 506 B.R. 509, 515 (Bankr. N.D. Ill. 2014) (collecting cases and following Lomas Mortgage).[4] The Third Circuit explained that by using the word "is" in the statutory language, "Congress equated the terms 'real property' and 'principal residence.'" Scarborough, 461 F.3d at 411. Therefore, the word "only" qualifies both the "real property" requirement *and* the "debtor's principal residence" requirement. Id. "A claim secured by real property that is, even in part, *not* the debtor's principal residence does not fall under the terms of § 1322(b)(2)." Id.; *see also* In re Adebanjo, 165 B.R. 98, 104 (Bankr. D. Conn. 1994).

---

[4] These cases diverge in the paths taken to reach this conclusion. The Third Circuit held that § 1322(b)(2) is unambiguous and that the anti-modification provision requires exclusive use based on the plain statutory text. Scarborough, 461 F.3d at 411. The First Circuit held that § 1322(b)(2) is ambiguous and looked to legislative history to determine that Congress intended the anti-modification provision to apply only when the real property was exclusively used as the debtor's principal residence. Lomas Mortg., 82 F.3d at 4, 6.

-6-

This Court is persuaded that the approach of the Third Circuit in Scarborough is the better reasoned view resulting from the more natural reading of § 1322(b)(2). The approach of the Wages court is flawed in that it would apply the limitation "only" to mean only real property – so long as the debtor is living on at least some portion of it. The anti-modification provision of § 1322(b)(2) is an exception to the general rule, but the Wages interpretation would cause the exception to swallow the rule. *See* Wages, 508 B.R. at 168 (Kurtz, J., dissenting) ("the majority takes the statutory phrase 'claim secured only by a security interest in real property that **is** the debtor's principal residence' and recasts it as if the phrase actually read 'claim secured only by a security interest in real property that *includes* the debtor's principal residence'") (emphasis in original).

In summary, the Court holds that a secured claim is protected by the anti-modification provision in § 1322(b)(2) only if its collateral is being used exclusively as the debtor's principal residence.[5] Because the Court's oral ruling at the evidentiary hearing comports with this holding, there is no error and CBT's motion to reconsider will be denied.[6]

---

[5] There is a related split of authority over what point in time a court must look in making this determination. *Compare* Benafel v. One W. Bank (In re Benafel), 461 B.R. 581, 588-90 (9th Cir. B.A.P. 2011) (the court must look to the petition date), *with* Scarborough, 461 F.3d at 412 (the court must look to the date the transaction was entered), *and with* In re Kelly, 486 B.R. 882, 886 (Bankr. E.D. Mich. 2013) (the court should look to where the debtor intends to reside during and after his bankruptcy). Because Moorer has not used the Land exclusively as his principal residence at any relevant point in the past and presumably will not do so in the future, the Court need not decide this issue today.

[6] The Court further notes that even if its interpretation of the anti-modification provision is incorrect, CBT's motion still fails as a matter of law. There is an exception to the anti-modification exception in Chapter 13 (but not in Chapter 11) that allows debtors to cram down short-term and balloon mortgages whose final payment would otherwise be due before the final plan payment is due. *See* 11 U.S.C. § 1322(c)(2); Paschen, 296 F.3d at 1207. Under the 2013 mortgage modification there is a balloon payment scheduled for May 15, 2016, while Moorer's

-7-

## III. CONCLUSION

The anti-modification provision of 11 U.S.C. § 1322(b)(2) protects an undersecured claim from cramdown only if it is secured exclusively by the debtor's principal residence. CBT's mortgage is secured not exclusively by Moorer's principal residence, but also by land used as a cattle pasture. Moreover, CBT's mortgage is scheduled to mature during the pendency of Moorer's bankruptcy, placing it within the ambit of 11 U.S.C. § 1322(c)(2). Therefore, CBT's anti-modification argument fails as a matter of law, and its motion to reconsider is DENIED.

January 15, 2016

William R. Sawyer
Chief U.S. Bankruptcy Judge

cc: Michael A. Fritz, Sr.
Von G. Memory

---

plan proposes fifty-eight monthly payments that will end in late 2018 or 2019. (Doc. 50). Thus, even if CBT's argument regarding § 1322(b)(2) is correct, Moorer may still modify the mortgage under § 1322(c)(2).

-8-